UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KENNETH CHHIM, | No. CV 04-7872-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on September 27, 2004, seeking review of the Commissioner's termination of his Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on November 4, 2004. Pursuant to the Court's Order, the parties filed an Amended Final Joint Stipulation on July 14, 2005, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

In a decision dated November 23, 1994, plaintiff was found to be under a "disability" as defined in the Social Security Act commencing November 12, 1992, on the basis of a severe dysthymic disorder. [AR at 113-16.] On July 7, 1999, plaintiff was advised that his disability was found to have ceased as of July, 1999, and that benefits would be terminated. [AR at 124-27.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on September 11, 2002. [AR at 339-73.]

After taking testimony and reviewing the record, the ALJ issued a decision dated November 15, 2002, finding that plaintiff's disability ceased effective July 1, 1999. [AR at 16-22.]

Plaintiff timely filed a request with the Appeals Council for review of the ALJ's decision. [AR at 11.] On July 28, 2004, the Appeals Council advised that the ALJ's decision would stand as the final decision of the Commissioner in plaintiff's case. [AR at 4-7.] Plaintiff then filed his Complaint herein on September 27, 2004.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court

must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving disability insurance benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment which is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    STEPS IN EVALUATING WHETHER DISABILITY CONTINUES**

20 C.F.R. §§ 404.1594(f) and 416.994(b)(5) outline the steps in evaluating whether disability continues for a person who has previously been determined to be disabled.  First, in disability insurance benefits cases, the Commissioner determines whether the individual is engaging in substantial gainful activity.  If so, and the applicable trial work period has been completed, the Commissioner determines that disability has ended.

Second, if not so engaged, the Commissioner determines whether the individual has an impairment or combination of impairments that meets or equals the severity of an impairment listed in Appendix 1 of Subpart P, Part 404.  If so, the Commissioner determines that disability continues.

Third, if the impairment or combination of impairments does not meet or equal the severity of a listed impairment, the Commissioner determines whether there has been medical improvement "as shown by a decrease in medical severity. . . . If there has been no decrease in medical severity, there has been no medical improvement."

Fourth, if there has been medical improvement, the Commissioner determines whether this improvement is related to the individual's ability to do work -- "i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination."

Fifth, if there has been no medical improvement or if the medical improvement was not related to an individual's ability to work, the Commissioner determines that disability continues absent evidence that certain exceptions apply. These exceptions fall into two categories. The first category concerns benefits to the individual from advances in medical technology in treating or diagnosing an impairment, the individual's participation in vocational therapy, an error in the prior determination, or, in the case of disability insurance benefits, the individual's engaging in substantial gainful activity. 20 C.F.R. §§ 404.1594(d), 416.994(b)(3). The second group of exceptions concerns situations where the prior determination was fraudulently obtained, where the individual fails to cooperate with the Commissioner, where the individual cannot be located, and where the individual fails to follow prescribed treatment. 20 C.F.R. §§ 404.1594(e), 416.994(b)(4). If the second group of exceptions applies, disability ends.

Sixth, if medical improvement is related to the individual's ability to do work or if one of the first group of exceptions applies, the Commissioner determines whether the individual's current impairments in combination are "severe" as defined in 20 C.F.R. § 404.1521 and 20 C.F.R. § 416.921. If the residual functional capacity assessment in step four shows significant limitation in the individual's ability to do basic work activities, then the evaluation continues. When the evidence shows that the current impairments in combination do not significantly limit an individual's physical or mental abilities to do basic work activities, disability ends. Seventh, if the impairment is "severe," the Commissioner determines the individual's residual functional capacity and whether the individual is able to perform work he had done in the past. If the individual can perform work done in the past, disability ends.

Eighth, if the individual is not able to do work he had done in the past, the Commissioner determines whether the individual can do other work considering the individual's residual functional capacity, age, education and past work experience. If the individual can do other work, disability will be found to have ended; if not, disability will be found to continue.

**B.     THE ALJ'S APPLICATION OF THE EIGHT-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the original determination of disability. [AR at 18.] The ALJ also found that plaintiff no longer has

4

an impairment or combination of impairments that meets or equals the severity of any impairment listed in Appendix 1, Subpart P, Regulations No. 4. (Step two.) [AR at 21.] The ALJ next found that on November 23, 1994, the date of the most recent favorable decision, plaintiff was disabled with a dysthymic disorder. However, the ALJ concluded that there has been medical improvement since July 1, 1999, and that this improvement is related to plaintiff's ability to work. (Steps three and four.) [AR at 21.] Accordingly, no decision of disability could be made at step five. At step six, the ALJ determined that plaintiff's present impairments are not severe, and that plaintiff's allegations of disabling pain and mental limitations are not credible. [AR at 22.] Accordingly, the ALJ found that plaintiff was no longer disabled and that his disability ceased as of July 1, 1999. [AR at 22.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ did not properly evaluate the medical and non-medical evidence in concluding that plaintiff's disability ceased on July 1, 1999.[1] For the reasons discussed below, the Court respectfully disagrees with plaintiff, and affirms the Commissioner's decision.

**A.   THE MEDICAL EVIDENCE**

In November, 1994, when it was determined that plaintiff had been disabled as of November 12, 1992, ALJ Erwin Stuller concluded that plaintiff suffered from a severe dysthymic disorder, and was "unable to understand, remember, or carry out simple instructions, respond appropriately to supervision, coworkers, and customary work pressures, deal with changes in a routine work setting, and use his judgment properly." [AR at 114-15.] Plaintiff was precluded from doing his past work, and there were no other jobs that he was capable of performing that existed in significant numbers in the national economy. [AR at 115.] In reaching this conclusion, the ALJ

---

[1] In the Joint Stipulation, plaintiff does not contend that the ALJ did not properly evaluate the evidence relating to plaintiff's physical impairments. Accordingly, the Court will not address that evidence herein.

1  relied in part on the evaluation of Dr. Michael Tjoa, a psychiatrist, who noted in March, 1993, that
2  plaintiff complained of, among other things, depression, poor appetite, irritability, difficulty sleeping,
3  and impaired memory and concentration. [AR at 74, 114.]

4  Starting in November, 1996, plaintiff was treated approximately every month by Dr.
5  Elizabeth Rowell, a psychiatrist. Notes of plaintiff's visits with her extend into 2002. [AR at 321-
6  33.] Although plaintiff regularly complained that he did not sleep well, at times he indicated that
7  he was sleeping "ok" or a "little better," and he was consistently alert and oriented. At times he
8  complained he had no energy. [AR at 321-33.] Dr. Rowell prescribed medications for plaintiff, and
9  some of his visits appeared to be specifically for medication refills, which he described as being
10 "good" for him. [AR at 327.][2]

11  In February, 1999, a psychiatric evaluation of plaintiff was conducted by Dr. Khang Nguyen.
12 Dr. Nguyen concluded that plaintiff's "cooperation and reliability are questionable." Plaintiff
13 complained that he was once hit on the head by the communists in Cambodia and has had
14 headaches ever since. He also complained of poor sleep at night and that he wakes up quite
15 often. He did not report any symptoms of post-traumatic stress disorder or complain of major
16 depressive symptoms. [AR at 189.] Plaintiff did not have a past psychiatric history or history of
17 any psychiatric hospitalizations. He was alert and animated, his affect was not flat, blunted or
18 constricted, and his psychomotor activity was within normal limits. He had no looseness of
19 association, had intact reality testing and was oriented. Based on his examination of plaintiff, Dr.
20 Nguyen found no evidence of a psychiatric diagnosis. He concluded that plaintiff was "able to
21 focus and maintain attention. He also can understand, remember and follow instructions." Dr.
22 Nguyen opined that plaintiff's poor performance on the intellectual function examination suggested
23 poor cooperation with the assessment. [AR at 189-92.]

---

[2]   Plaintiff complains that the disability hearing officer did not consider Dr. Rowell's records when he determined that plaintiff was no longer disabled. [AR at 135-42.] While this appears to be true, this Court's review is limited to the final decision of the Commissioner (see 42 U.S.C. §§ 405(g), 1383(c)(3)); the ALJ reviewed and considered Dr. Rowell's records. [AR at 18-19.]

In March, 1999, Dr. Michael Skopec, a board certified psychiatrist, completed a psychiatric review technique form in which he found that plaintiff had no medically determinable impairment. [AR at 193.]

At the hearing on September 11, 2002, plaintiff testified through an interpreter that he was 59 years old, came to the United States from Cambodia in 1981, but does not speak and understand much English. [AR 351-52.] Plaintiff testified that he cannot work because his brain "hurts all the time." He also experiences chest pain and "heart throbs." [AR at 355.] Plaintiff suffers from dizziness and headaches, but he does not remember if he has diabetes. His back also hurts and he is depressed. [AR at 356.] The pain occurs "very often." [AR at 357.] He has been seeing a doctor for depression. [AR at 357.] The medication he takes for depressions helps. [AR at 360.] He cannot hold things without them falling and he cannot lift with his right arm above the horizontal level. [AR at 358-59.] The most he can lift is 10 pounds. He cannot wash his face with his right hand. [AR at 359.] His condition has not gotten better since he originally started receiving Supplemental Security Income. [AR at 360-61.]

In determining whether plaintiff continues to be disabled, the ALJ concluded that plaintiff "has not received any significant psychiatric treatment since his original allowance," and that there has been "significant improvement in his condition" since the time benefits were allowed based on his dysthymic disorder. [AR at 21.] Plaintiff argues that a comparison between plaintiff's symptoms and condition at the time he was first found disabled in 1992, and his condition as found by Dr. Elizabeth Rowell and physicians at the 3-M Family Mental Health Center in 1999,[3] shows that his condition has not medically improved to permit him to perform work. Joint Stipulation at 4. He further argues that since the consultative examiners relied on by the current ALJ did not have plaintiff's prior records that formed the basis for the initial disability finding, an appropriate comparison cannot be done to determine if any improvement has occurred. Joint Stipulation at

---

[3] From March 29, 2001, through August 19, 2002, plaintiff had regular appointments at the 3-M Family Health Medical Center at which he complained of headaches, dizziness, leg pain, waist pain, neck pain and fatigue. He apparently received various medications. [AR at 285-299.] Records from that facility prior to May 24, 1999 [AR at 250-84] do not support plaintiff's contention that he remained disabled after July 1, 1999.

5. Plaintiff is correct that it is necessary to compare the "current medical severity" of the impairment with the medical severity at the time plaintiff was found to be disabled (the point of comparison). 20 C.F.R. § 416.994(b)(1)(vii). Here, the ALJ reviewed the various medical opinions and determined that improvement had taken place, and that plaintiff has not had a severe impairment since July 1, 1999. [AR at 21.] As set forth below, to the extent this conclusion was a rejection of plaintiff's treating psychiatrist, Dr. Rowell, the ALJ amply supported that rejection.

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The opinion of a treating physician is given deference because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987) (citations omitted). "The opinion of the treating physician, however, is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989).

"'The administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so.'" Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (quoting Matthews v. Shalala, 10 F.3d at 678, 680 (9th Cir. 1993) (quoting Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984)); see also Lester, 81 F.3d at 830. Even if a treating physician's opinion on disability is controverted, it can be rejected only with specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. Lester, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons supported

by substantial evidence in the record to reject the contradicted opinion of an examining physician. Id. at 830-31.

"The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. Opinions of a non-examining, testifying medical advisor may serve as substantial evidence only when they are supported by other evidence in the record and are consistent with it. Andrews, 53 F.3d at 1041. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes, 881 F.2d at 750 (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)). "'A report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence in the record.'" Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984), quoting Millner v. Schweiker, 725 F.2d 243, 245 (4th Cir. 1984).

Here, the ALJ properly relied on the opinions of Dr. Nguyen and the state agency physician to determine that plaintiff has shown medical improvement, and there is substantial evidence supporting the ALJ's decision. Dr. Nguyen clearly concluded, following an evaluation, that plaintiff had no mental disability. As plaintiff once was diagnosed with dysthymic disorder, and now has no mental disability, improvement is apparent. It was not necessary for the consultative examiner to review plaintiff's past records for a conclusion concerning improvement to be reached, as it is not his task to evaluate improvement. Rather, the determination of improvement is reserved for the Commissioner. 20 C.F.R. § 416.927(e) ("[w]e are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled . . . Although we consider opinions from medical sources on issues such as your residual functional capacity . . ., the final responsibility for deciding these issues is reserved to the Commissioner"). The ALJ further concluded that "[t]here is nothing to show that [plaintiff] has any functional limitations with his psychotropic medications." [AR at 19.] Dr. Rowell's records

do not establish any functional limitations, and plaintiff points to nothing in those records showing otherwise.

As noted above, Dr. Rowell refilled plaintiff's medications, and plaintiff notes that his medications are "good" for him. The ALJ rejected Dr. Rowell's records, finding them "particularly unimpressive," and noting that there was "no initial evaluation, no diagnosis stated, no evidence of psychological testing and no evaluation of the severity of [plaintiff's] condition." [AR at 18.] As the ALJ need not accept a treating physician's opinion which is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusions," plaintiff has not shown that the ALJ erred in rejecting Dr. Rowell's assessment to the extent that it concerns plaintiff being permanently disabled. Magallanes, 881 F.2d at 751 (quoting Young v. Heckler, 803 F.2d 963, 968 (9th Cir.1986)); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (the ALJ need not accept a treating physician's opinion which is "conclusory and unsubstantiated by relevant medical documentation"); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (ALJ may reject the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings). The ALJ provided specific and legitimate grounds to reject this evidence.

Plaintiff also argues that the ALJ "could have requested a functional assessment from Dr. Rowell." Joint Stipulation at 11. While the ALJ has a duty to fully develop the record, there were no ambiguities here to resolve. See, e.g., DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991) (ALJ has duty to develop the record further when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence); 20 C.F.R. § 416.919a(b)(4) (where the medical evidence contains "[a] conflict, inconsistency, ambiguity, or insufficiency," the ALJ should either order a consultative examination or attempt to resolve the inconsistency by recontacting the treating physician). Neither does plaintiff having the same self-reported symptoms now as he did in 1992 establish disability, especially where the ALJ questioned plaintiff's credibility [AR at 20-22], a finding that plaintiff does not contest in the Joint Stipulation. The ALJ can rely on the opinion of an examining physician even over the contradictory opinion of a treating physician when it is based on independent clinical findings, as Dr. Nguyen's opinion was here. Dr. Nguyen's report supports the ALJ's decision that plaintiff's condition has improved to the point

where he has no severe impairment. This is a change in the "signs" associated with the impairment on which the ALJ can rely. 20 C.F.R. § 416.994(b)(1)(i). Remand is not warranted.

**B.    LAY WITNESS TESTIMONY**

Plaintiff also asserts that the ALJ did not properly consider the lay evidence provided by plaintiff's daughter, Samcheth Chhim. She testified that for the last two years she has seen her father about once a week. She indicates that plaintiff does not cooperate with his family, does not finish jobs he is given around the house, and does not do much except sit and talk to himself and get depressed. Plaintiff gets angry with everybody. [AR at 362-63.] He cannot handle noise. Plaintiff has no activities outside the house. [AR at 364.] He has been more depressed during the last two years and has gotten worse. [AR at 366.] He does not understand how to make change. [AR at 365.]

Lay witness testimony is "qualified evidence" that the ALJ must consider. See Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996) (testimony from lay witnesses, who see the plaintiff on a daily basis and are often family members, is of noted value); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("[a]n eyewitness can often tell whether someone is suffering or merely malingering . . . this is particularly true of witnesses who view the claimant on a daily basis. . ."). An ALJ may reject lay testimony only for specific reasons germane to each witness. See Regennitter v. Commissioner of the Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Smolen, 80 F.3d at 1289.

As stated in 20 C.F.R. §§ 404.1513(d) and 416.913(d), judges may, "in addition to evidence from the acceptable medical sources . . . also use evidence from other sources to show the severity of [plaintiff's] impairment(s) and how it affects [his] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d) (2005). Such other sources include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Thus, lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider. Sprague, 812 F.2d at 1231-32; see Dodrill, 12 F.3d at 919 ("[a]n eyewitness can

often tell whether someone is suffering or merely malingering.... [T]his is particularly true of witnesses who view the claimant on a daily basis..."). An ALJ's consideration of lay testimony becomes especially important when a plaintiff alleges "that pain is a significant factor of his alleged inability to work and the allegation is not supported by objective medical evidence in the file." SSR[4] 88-13; see Smolen, 80 F.3d at 1288. To reject lay testimony, an ALJ must give reasons "germane to each witness" for doing so. Dodrill, 12 F.3d at 919.

Here, the ALJ considered the testimony of plaintiff's daughter[5] and concluded that it reflects either "cultural adjustment problems" or exaggeration by the daughter of "an older person's foibles." [AR at 19.] He refused to find plaintiff disabled absent "some psychiatric support for functional limitations." Id. Plaintiff has not indicated what testimony from his daughter the ALJ rejected, and how that would have impacted on the evaluation of disability. The fact that her testimony in 2002 may be consistent with that when her father was found disabled years earlier does not indicate that plaintiff has not experienced improvement in his condition to the extent that Dr. Nguyen's findings -- or the ALJ's reliance on them -- have been undermined. The ALJ's consideration of this evidence does not warrant remand.

/
/
/
/
/
/
/
/

---

[4] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[5] The ALJ erroneously refers to Samcheth Chhim as plaintiff's son. [AR at 19.] Plaintiff's daughter testified at the hearing. [AR at 362.]

## VI.

## **CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: January 9, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE